The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chrystal Redding Stanback and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. However, pursuant to its authority under G.S. § 97-85, the Full Commission has modified the Deputy Commissioner's decision regarding the manner of payment of attorney's fees.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Order dated 16 June 1997 and at the hearing on 18 June 1997 as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer at the times in question.
3. The employer is self-insured with CompSource as the administrator.
4. Plaintiff's average weekly wage is $320.00 per week.
5. Defendant admits that plaintiff sustained an injury on 6 October 1994.
6. Defendant admits that this injury arose out of and in the course of plaintiff's employment and is compensable.
7. Various medical records and other documents have been stipulated into evidence with the Pre-Hearing Agreement, marked as Stipulated Exhibit #1.
8. The issues for determination include: (a) whether plaintiff's sexual dysfunction is related to his admittedly compensable injury, and; (b) what amount compensation, if any, is plaintiff entitled to for her back injury, sexual dysfunction, left arm scar and sternum fracture.
 ***********
The Full Commission adopts the findings of Fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff worked as a truck driver for defendant's fertilizer and hardware business beginning August 1994. That job involved driving a large lime and fertilizer truck and making deliveries.
2. On 6 October 1994, the brakes failed on the truck plaintiff was driving resulting in the truck leaving the road and striking a bank and some trees. As a result of the truck accident, plaintiff sustained a T-12 vertebra compression (30%-50% loss of height) fracture, a fractured sternum and laceration of his left arm.
3. Plaintiff was admitted to Catawba Memorial Hospital overnight and released 7 October 1994. Plaintiff, within two to three weeks of the injury, began experiencing intense burning pain at and above the waist level. Thereafter, Dr. Allen Forshey, a family physician approved by defendant, treated plaintiff and later referred plaintiff to Dr. Menard.
4. Dr. Dale Menard, a board certified neurologist, began treating plaintiff 29 August 1995. An 4 October 1995 MRI again confirmed the T-12 compression fracture with some nerve compression/radiculopathy. Dr. Menard treated plaintiff's spine injury with Tegretol from 29 August 1995 through 28 April 1996.
5. Within a few weeks of beginning the Tegretol treatment, plaintiff experienced sexual impotency. Impotency is a known complication of Tegretol treatment. Before 29 August 1995, plaintiff had been treated with various blood pressure medicines, including Cardura, but had no problems with impotency.
6. Plaintiff was almost totally impotent (no penile erections) during the Tegretol treatment. After the treatment stopped, plaintiff had partial erections, but within a few weeks his condition returned to total natural impotency. Impotency is often a combination of physical injury, a prolonged period of no erections, and resulting psychological disturbance.
7. Plaintiff has been treated since 22 December 1995 for erectile dysfunction by Dr. Geoffrey DeLeary, a board certified urologist. Plaintiff has also had a second opinion by Dr. Gary Pitts, also a board certified urologist.
8. Dr. DeLeary and Dr. Pitts, as well as Dr. Menard and Dr. Ray, opined that plaintiff's sexual dysfunction is probably the result of his back injury and Tegretol treatment. The Full Commission adopts the opinions of said physicians.
9. Plaintiff has essentially one-hundred percent permanent loss of normal erectile function, and only has sexual function with penile injections which will be necessary for the remainder of his life.
10. Dr. Maher Habashi, a board certified orthopaedic surgeon, on 29 October 1996, rated plaintiff at twenty-five percent (25%) impairment of the back. Dr. Habashi based his rating upon the T-12 vertebra body fracture, loss of motion and neurological changes. Dr. Habashi also opined that plaintiff's condition is likely to worsen with further collapse of the vertebrae, and osteoporosis and strain upon the other vertebrae.
11. Dr. Thomas Ray, a board certified rehabilitation physician, on 24 June 1996 had rated plaintiff at fifteen percent (15%) of the back. However, Dr. Ray omitted considering plaintiff's loss of motion, even though at the last visit, Dr. Ray noted plaintiff could not return to truck driving because of problems with rotating/twisting his body. Dr. Habashi's later examination indicated plaintiff still had considerable loss of motion from the injury, and therefore Dr. Habashi's permanency rating is given more weight.
12. Plaintiff's sternum fracture has resolved without any permanent disability, and his arm laceration without significant disfigurement.
13. Plaintiff's average weekly wage of $320.00 yields a compensation rate of $213.34.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the 6 October 1994 admittedly compensable injury by accident, plaintiff sustained a twenty-five percent (25%) permanent partial disability to his back for which he is entitled to be compensated G.S. § 97-31(23).
2. As a result of the 6 October 1994 admittedly compensable injury by accident plaintiff sustained sexual impotency and permanent loss of natural erectile function for which he is entitled to be compensated in the amount of $20,000. G.S. §97-31(24).
3. Plaintiff will require lifetime medical treatment for his impotency for which defendants are responsible. G.S. §97-25.1.
4. Plaintiff's average weekly wage of $320.00 yields a compensation rate of $213.34. G.S. § 97-2(5).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $213.34 per week for (75) weeks for the twenty-five percent (25%) permanent partial disability to his back. Having accrued, this amount shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendant shall pay plaintiff $20,000.00 for permanent loss of natural erectile function/sexual impotency. Having accrued, this amount shall be paid in a lump sum. This compensation is subject to the attorney's fee approved herein.
3. An reasonable attorney's fee of twenty-five percent (25%) of the above compensation is approved for counsel for plaintiff. The above compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
4. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the plaintiff's period of disability, when bills for same have been submitted and approved by the Industrial Commission. It is anticipated that the treatment for sexual dysfunction shall be life long.
5. Defendants shall pay the costs due to the Commission.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _______________ RENÉE C. RIGGSBEE COMMISSIONER
S/ _______________ DIANNE C. SELLERS COMMISSIONER